

**OSEN LLC**
ATTORNEYS AT LAW

2 University Plaza, Suite 201, Hackensack, NJ 07601
Telephone 201.265.6400  Facsimile 201.265.0303
www.osen.us

May 23, 2013

**VIA ECF AND FEDEX**

Honorable Nina Gershon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Linde, et al. v. Arab Bank, PLC*, 04-cv-2799 (NG)(VVP) and related cases

Dear Judge Gershon:

We write, on behalf of all Plaintiffs, in response to Defendant Arab Bank's ("Defendant," or "the Bank") letter to the Court dated May 22, 2013 (the "May 22 Letter"), in which the Bank requests that the Court reconsider or vacate its 2010 adoption of the Plaintiffs' proposed Trial Management Order, claiming that bifurcation in this instance is improper. The Court should reject Defendant's latest attempt to delay the pretrial process, and direct counsel to exchange their case-in-chief deposition designations, exhibit lists and witness lists by June 5, 2013, with the proviso that a non-compliant party may be precluded from later designating such material.

### Introduction

At the April 24, 2013, hearing, the Court largely denied the Bank's Motion for Summary Judgment and, after hearing from counsel for all parties, ordered the parties to submit a joint Pretrial Order ("PTO") no later than June 24. Because the PTO contemplated by the Court's Individual Rules requires the parties to work together to exchange information and meet and confer in advance of submitting the PTO to the Court, counsel for Plaintiffs sent counsel for the Bank a letter on April 26, attached as Exhibit A, proposing a series of interim dates on which the parties would exchange information, with the goal of complying with the Court's June 24 deadline. Since then, in a series of letters and one phone call, the Bank has consistently refused to discuss any schedule by which the parties could meet this deadline, or propose any alternative interim exchange dates or other protocols regarding discrete items in Your Honor's Individual Practice Rules. Instead, Defendant has chosen to challenge the probity of the Trial Management Order decided by the Court years ago.

Notwithstanding Defendant's refusal to discuss how to comply with the Court's June 24 deadline, Plaintiffs' counsel have used the month since the April conference to prepare the PTO as instructed. Defendant has taken a different tack: filing a motion for reconsideration and certification for interlocutory appeal of the Court's summary judgment decision, and now for a reconsideration of the Trial Management Order approved years ago. The Court should reject the Defendant's transparent attempt to delay the pretrial process and order it to comply with the Court's clearly delineated pretrial directives.

### The Trial Management Order

Between 2007 and 2009, the parties submitted detailed proposals for the order and phases of trials in this case. On June 3, 2009, and July 22, 2010, the Court held hearings that dealt, in detail, with these proposals. In this context, the Court ultimately adopted the *Linde* Plaintiffs' proposal, which provided that the first trial would involve ATA claims for the 24 attacks attributable to Hamas, and that this trial would be divided into two phases, with the first phase to involve the issues of scienter, proximate cause and attribution (*i.e.* Hamas's responsibility for these 24 attacks). *See Linde / Litle / Coulter/ Bennett / Roth Plaintiffs' Proposed Trial Structure* dated Mar. 22, 2007 (ECF No. 328) at 6-8; Oct. 3, 2008 Ltr. from Michael E. Elsner to Hon. Nina Gershon (ECF No. 515) at 1-2; Oct. 26, 2009 Ltr. from Gary M. Osen to Hon. Nina Gershon (ECF No. 586) at 2. The Court's decision clearly contemplated that only in the second phase would Plaintiffs be called upon to offer evidence that they were injured, the nature and extent of their injuries, and the connection between their injuries and one of the 24 attacks in question. *Id.*

Obviously, the 14-day period within which the Bank could have sought reconsideration of the Court's July 22, 2010, Minute Order expired years ago. In Defendant's letter of May 22, 2013, it does not even argue, much less demonstrate, that its failure to seek reconsideration within 14 days was due to excusable neglect on its part.[1] Nor are there changed circumstances warranting a re-opening of this long-decided issue. Instead, the Bank merely notes, repeatedly, that three years have passed since the Court's Trial Management Order. Such passage of time, however, does not justify revisiting the Court's decision, which was based on features of the case that have not changed in the interim. Moreover, during much of this period of time, the case was essentially frozen because of Defendant's unsuccessful detour to the Second Circuit.

### Including the 24 Hamas Attacks in the First Trial is Appropriate

There is no reason to alter the Trial Management Order at this juncture. The Court's decision struck an appropriate balance between judicial economy and manageability in a manner that avoided prejudice.

---

[1] Noticeably absent from the May 22 Letter is an acknowledgment that Defendant's counsel expressly advised the Court during a June 3, 2009 hearing that the issue of whether a specific Plaintiff was, in fact, injured in any given attack was a matter that should be reserved for a subsequent phase of trial. *See* Jun. 3, 2009 Tr. at 27:2-18; 28:1-3; 39:17-40:7; and 47:10-16; attached as Exhibit B.

First, the Bank's argument that it will be unfairly prejudiced by a trial that includes the 24 Hamas-perpetrated attacks is meritless. It is simply not true that evidence related to one attack is irrelevant to each of the other attacks. In fact, the Bank's provision of material support to Hamas is part of a unitary and pervasive course of conduct such that it would be impossible and artificial to cabin off the proof by individual attack. In particular, the Bank's awareness of Hamas's history of anti-Israel terrorism, both before and during the Second Intifada, is integral to showing its state of mind under the ATA.

The Bank's complaint of spillover prejudice because of the inclusion of evidence of multiple attacks is meritless. Cases consolidated for trial are rarely severed because of a concern about spillover prejudice.[2] In fact, in the criminal context, where the dangers posed by potential spillover prejudice are far more profound, courts routinely reject defendants' arguments that they will be prejudiced by evidence of multiple criminal acts if various counts, or other defendants, are not severed from their trials. *See United States v. Blackshear*, 2008 WL 731482 (2d Cir. 2008) at *2 (affirming district court's denial of severance because of purported spillover prejudice and noting that "[m]otions for severance are committed to the discretion of the trial court and 'the sound exercise of that discretion is virtually unreviewable.'") (internal citation omitted); *United States v. Jones*, 482 F.3d 60 (2d Cir. 2006) (affirming district court's refusal to sever for prejudicial spillover); *United States v. Cardascia*, 951 F.2d 474 (2d Cir. 1991) (same).

Severance is particularly unlikely to be granted when the evidence in question is admissible against the moving defendant, *Blackshear*, 2008 WL 731482 at *2, or where the evidence of other acts is no more inflammatory as evidence than would already be admitted against the defendant. *See Jones*, 482 F.3d at 78 ("In analyzing a claim of prejudicial spillover, we consider '(1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar..."); *Cardascia*, 951 F.2d at 483 ("Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater. The unrelated evidence presented in the instant case revealed only another bank fraud scheme."). Here, each of the 24 attacks at issue involved violent acts of terrorism, so there can be no argument that including them in one trial prejudices the Bank by allowing evidence of a wrongful act that is fundamentally *different in kind*. Even if there were such a discrepancy, and even if the attacks were not part of one unitary course of conduct, the Court is well able to give a limiting instruction if necessary, and the law is clear that juries are presumed to follow such instructions. *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993).

---

[2] The cases cited by the Bank at pp. 7-8 of its letter are wholly inapposite. *Tardd v. Brookhaven Nat'l Lab.*, 2007 WL 1423642 (E.D.N.Y. May 8, 2007), *Corporan v. City of Binghamton*, 2006 WL 2970495 (N.D.N.Y. Oct. 16, 2006), and *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 566 (E.D.N.Y. 1999) involved race discrimination claims and Fed. R. Civ. P. 21 motions for severance, which involved multiple alleged disparate illegal conduct by a defendant, each of which independently might suggest racial bias. Here, by contrast, the Bank is accused of a single course of conduct (facilitating material support to Hamas and Hamas terrorists), albeit through a variety of interconnected channels. *AG Equip. Co. v. AIG Life Ins. Co.*, 2009 WL 236019 (N.D. Okla. Jan. 29, 2009) is even further afield; in that case the court severed claims and counterclaims sounding in breach of contract from claims brought by the plaintiff against one of defendant's former employees for emotional distress.

The Bank's complaint about prejudice is particularly implausible given that Plaintiffs long ago agreed to sever the case into separate trials for liability and damages. This instantly insulated the Bank from the most serious risk of prejudice – the prospect of hundreds of victims and family members giving gutwrenching and often emotional testimony – during the first phase of the trial. It is a mark of how disingenuous the Bank's proposal is that it complains of purported spillover prejudice from the inclusion of multiple attacks while simultaneously insisting that Plaintiffs are statutorily obligated to call each one of the hundreds of victims during the first trial to prove they were injured.

Finally, the Bank's citation (May 22 Letter at 8) to a comment made by the Court at the April 24 hearing is puzzling. The Court was noting that trials of a certain length begin to become unwieldy and difficult to manage and was *not* commenting on any purported prejudice. Moreover, a trial that is limited to the ATA claims for attacks perpetrated by Hamas is *not* likely to be a "megatrial" lasting several months. Defendant's prediction of a trial that requires hundreds of witnesses and lasts several months is little more than an attempt to artificially cultivate the specter of an unmanageable trial that requires serial bifurcation and indefinite delay. In reality, the defense case will likely consume very limited jury time. Mr. Walsh previously estimated that the Bank would call four fact witnesses. *See* June 17, 2010 Ltr. from Kevin Walsh to Plaintiffs' counsel, attached as Exhibit C. Although the Bank would doubtless now submit a much longer witness list in support of its efforts to delay a trial date, a significant percentage of "evidence" proffered by the Bank will likely be inadmissible and ultimately excluded, leading to a substantially streamlined trial. The parties' PTO should be revealing in that regard, which provides another reason for the Court to insist on maintaining the current schedule for submission of the PTO.

### The Court Has Discretion to Defer Proof of Injury Until the Second Trial

The Bank's argument that "as a matter of law under the ATA," proof of injury must be established during the first trial is both incorrect and flatly inconsistent with its own previous position. In particular, counsel for the Bank previously argued to the Court that the issue of whether a plaintiff is a "proper plaintiff" (*a.k.a.* does the plaintiff have standing to pursue the claim) ought to be relegated to a later trial phase. *See* June 3, 2009, Tr. at 28:1-3, 27:2-18, 39:17 – 40:7, and 47:10-16 (statements of Kevin Walsh). Having acceded to and, indeed, vigorously advocated in favor of, relegating this element of proof to the second trial phase, the Bank should not now be heard to change its position years later.

In any event, there is nothing under either the ATA or the Federal Rules of Civil Procedure that mandates that proof of injury be part of the first trial phase. Fed. R. Civ. P. 42(b) expressly permits bifurcation of "issues," and juries can and frequently are empaneled to hear evidence on, and render verdicts about, one or more particular issues of disputed fact. In fact, the decision of whether to divide a case into multiple trials and, if so, how to most efficiently accomplish that task is an area where the discretion of district courts is at its broadest. *See In re Benedectin Litig.*, 857 F.2d 290, 316-17 (6th Cir. 1988) (determination to trifurcate products liability action against drug manufacturer and to try the issue of proximate causation first was not improper, and noting "[i]n reviewing the district court's decision to trifurcate we ... note Rule 42

which 'giv[es] the court *virtually unlimited freedom to try the issues in whatever way trial convenience requires*.") (emphasis added, citation omitted); *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 27 (E.D.N.Y. 2001) (Weinstein, J.) (noting that Rule 42(b) affords broad discretion and "[o]n its face, Rule 42(b) encourages the severing of issues for trial, guaranteeing trial judges optimum flexibility in structuring litigation with an eye toward providing a fair and efficient remedy").

## Conclusion

The Bank's May 22, 2013, letter is only Defendant's latest attempt to reargue points already decided in its efforts to delay the trial date. In a case that is now in its ninth year, the Court should reject this effort and reaffirm the deadline of June 24 for a submission of a joint PTO. Because the Bank has thus far refused to engage with the Plaintiffs on the necessary interim dates for exchange of information, we respectfully submit that the Court should impose such a calendar by entering a Minute Order directing counsel to exchange their case-in-chief deposition designations, exhibit lists and witness lists by June 5, and to be subject to potential future preclusion of materials not designated by that date.

Should the Court wish to schedule a telephonic or in-person conference to further discuss this issue, we respectfully request that Your Honor do so as promptly as the Court's schedule permits, to mitigate the harm caused by Defendant's continuing efforts to delay and thwart the Court's orders.

Respectfully submitted,

Gary M. Osen

Encls.

cc: All Counsel