UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

COURTNEY LINDE, et al.                    :
                                          :     Case No. CV 04 2799 (NG)(VVP) *and all*
                                          :     *related cases**
                        Plaintiffs,       :
                                          :
         -against-                        :
                                          :
ARAB BANK, PLC,                           :
                                          :
                        Defendant.        :
_____       :

## JOINT PRE-TRIAL ORDER

1.    **FULL CAPTION OF THE ACTION**

      **See above.**  The names of those Plaintiffs who are included in the first trial are attached
      as **Exhibit A** to this pre-trial order.

 2.    **TRIAL COUNSEL**

      The names, addresses (including firm names), telephone and fax numbers of trial counsel
are as follows:

      **(a)        For the Plaintiffs:**

      Sayles Werbner P.C.
      Mark S. Werbner
      1201 Elm Street, Suite 4400
      Dallas, Texas 75270
      Tel: (214) 939-8711
      Fax: (214) 939-8787
      *Litle, Roth,* and *Bennett* Trial Counsel

      Heideman Nudelman & Kalik, P.C.
      Richard D. Heideman

---

*         *Litle, et al. v. Arab Bank, PLC,* No. CV-04-5449 (E.D.N.Y. 2004) (NG)(VVP); *Almog, et al. v. Arab Bank,
PLC,* No. CV-04-5564 (E.D.N.Y. 2004) (NG)(VVP); *Coulter, et al. v. Arab Bank, PLC,* No. CV-05-365 (E.D.N.Y.
2005) (NG)(VVP); *Afriat-Kurtzer, et al. v. Arab Bank, PLC,* No. CV-05-388 (E.D.N.Y. 2005) (NG)(VVP); *Bennett,
et al. v. Arab Bank, PLC,* No. CV-05-3183 (E.D.N.Y. 2005) (NG)(VVP); *Roth, et al. v. Arab Bank, PLC,* No. CV-
05-3738 (E.D.N.Y. 2005) (NG)(VVP); *Weiss, et al. v. Arab Bank, PLC,* No. CV-06-1623 (E.D.N.Y. 2006)
(NG)(VVP); *Jesner, et al. v. Arab Bank, PLC,* No. CV-06-3869 (E.D.N.Y.) (NG)(VVP); *Lev, et al. v Arab Bank,
PLC,* No. CV-08-3251 (E.D.N.Y. 2008) (NG)(VVP); and *Agurenko, et al. v. Arab Bank, PLC,* No. CV-10-626
(E.D.N.Y. 2010) (NG)(VVP).

1

1146 19th Street, NW, 5th Floor
Washington, DC 20036
(202) 463-1818
*Litle, Roth,* and *Bennett* Counsel

Motley Rice, LLC
Michael Elsner
Donald Migliori
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
Tel: (843) 216-9000
Fax: (843) 216-9450
*Almog, Afriat-Kurtzer,* and *Lev* Trial Counsel

Osen LLC
Gary M. Osen
2 University Plaza, Suite 201
Hackensack, New Jersey 07601
Tel: (201) 265-6400
Fax: (201) 265-0303
*Linde* and *Coulter* Trial Counsel

Zuckerman Spaeder, LLP
Aitan D. Goelman
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
*Linde* and *Coulter* Trial Counsel

Turner & Associates, P.A.
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
Tel: (501) 791-2277
Fax: (501) 791-1251
*Linde* and *Coulter* Trial Counsel

**(b)      For the Defendant:**

DLA Piper LLP (US)
Shand S. Stephens, Esq.
Kevin Walsh, Esq.
Anthony P. Coles, Esq.
1251 Avenue of the Americas
New York, NY 10020

Tel:  (212) 335-4500
Fax: (212) 335-4501

## 3.   SUBJECT MATTER JURISDICTION

(*A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.*)

### (a)   Statement by Plaintiffs

This Court has subject matter jurisdiction over these cases pursuant to 18 U.S.C. § 2333(a) of the Anti-Terrorism Act (the "ATA"), 18 U.S.C. §§ 2331 *et seq.*  Jurisdiction is also conferred under 28 U.S.C. § 1331, which confers federal courts with jurisdiction over all cases brought under the Constitution and the laws of the United States.

### (b)   Statement by Defendant

To the extent that each of the Plaintiffs identified in Section 1 above establishes that he or she is a national of the United States who has been injured by an act of international terrorism, Defendant Arab Bank does not otherwise contest that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2331 *et seq.*

## 4.   SUMMARY OF CLAIMS AND DEFENSES

(*A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on. Such summaries shall identify all claims and defenses previously asserted which are not to be tried.*)

### (a)   Plaintiffs' Statement of Claims

Each Plaintiff's claim arises under § 2333(a) of the ATA.  Each Plaintiff alleges that he or she was injured by reason of acts of international terrorism as that term is defined under 18 U.S.C. § 2331(1), and each Plaintiff's injuries arise from one of the following attacks that occurred in the State of Israel, or in the West Bank or Gaza Strip, each of which is alleged to have been perpetrated or facilitated by the Foreign Terrorist Organization (FTO) Hamas:

- March 28, 2001 – Suicide Bombing at Neve Yamin.

- June 1, 2001 – Suicide Bombing at the Dolphinarium in Tel Aviv.

- August 9, 2001 – Suicide Bombing at Sbarro in Jerusalem.

- December 1, 2001 – Suicide Bombings on Ben Yehuda Street.

- December 12, 2001 – Attack on Bus No. 189 at Emmanuel.

- March 7, 2002 – Suicide Attack at Atzmona.

- March 10, 2002 – Suicide Bombing at Café Moment.

- March 27, 2002 – Suicide Bombing at the Park Hotel, Netanya.

- May 7, 2002 – Suicide Bombing at the Sheffield Club, Rishon Le-Zion.

- September 19, 2002 – Suicide Bombing on Bus No. 4, Allenby Street.

- June 18, 2002 – Suicide Bombing on Bus No. 32-A, Patt Junction, Jerusalem.

- July 31, 2002 – Bombing of the Frank Sinatra Cafeteria at Hebrew University.

- January 29, 2003 – Shooting Attack on Road 60.

- March 5, 2003 – Suicide Bombing on Bus No. 37, Haifa.

- March 7, 2003 – Shooting Attack in Kiryat Arba.

- April 30, 2003 – Suicide Bombing at Mike's Place, Tel Aviv.

- May 18, 2003 – Suicide Bombing on Bus No. 6, French Hill, Jerusalem.

- June 11, 2003 – Suicide Bombing on Bus No. 14A, Jaffa Road, Jerusalem.

- June 20, 2003 – Shooting Attack on Road 60.

- August 19, 2003 – Suicide Bombing on Bus No. 2, Jerusalem.

- September 9, 2003 – Suicide Bombing at Café Hillel, Jerusalem.

- October 22, 2003 – Shooting Attack in Tel Rumeida.

- January 29, 2004 – Suicide Bombing on Bus No. 19, Jerusalem.

- September 24, 2004 – Mortar Attack on Neve Dekalim.

Plaintiffs allege that Defendant is liable to each of them under § 2333(a) because Arab Bank violated § 2339A (prohibiting providing material support to terrorists or for terrorist acts), § 2339B (prohibiting providing material support to FTOs), and/or § 2339C (prohibiting the financing of terrorism).  Plaintiffs allege that the Bank provided material support to Hamas, and for terrorist acts, with a culpable state of mind, and that the Bank's conduct was both a cause-in-fact and a proximate cause of their injuries.  Plaintiffs allege that the Bank transmitted material support to Hamas and for terrorism or terrorist acts through multiple channels over many years, in an amount, at a time, and with a state of mind that rendered it a proximate cause of their injuries, and that it was foreseeable that providing such material support would result in injury and/or death to the Plaintiffs.  In sum, the material support comprised:

- Maintaining accounts and providing services to Hamas leaders, operatives, and their families.

- Providing material support to Hamas front organizations.

- Maintaining and facilitating a death and dismemberment benefit plan for the Saudi Committee for the Support of the Intifada Al Quds that included making payments to Hamas members, prisoners, operatives, and their families, as well as separately making payments sponsored by two Hezbollah front organizations.  Although not all the persons to whom Arab Bank transmitted payments were Hamas members, Plaintiffs allege that the Saudi Committee for the Support of the Intifada Al Quds conspired with Hamas in determining who would receive payments under the program.

In 2004, Defendant moved to dismiss the *Linde* Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In a decision reported at *Linde v. Arab Bank plc*, 384 F. Supp. 2d 581 (E.D.N.Y. 2005), the Court largely denied Defendant's motion.  However, the Court dismissed Count Five (violation of the reporting requirements in 18 U.S.C. § 2339B(a)(2)) and Count Eight (intentional infliction of emotional distress) of the First Amended *Linde* Complaint.[1]  *See also Linde v. Arab Bank Plc*, 353 F. Supp. 2d 327 (E.D.N.Y. 2004) (denying *Linde* plaintiffs' request for preliminary relief on ground that 18 U.S.C. § 2339B(a)(2) did not provide implied private right of action).  In 2005, Defendant moved to dismiss the *Almog* and *Afriat-Kurtzer* First Amended Complaints pursuant to Fed. R. Civ. P. 12(b)(6).  In a decision reported at *Almog v. Arab Bank plc*, 471 F. Supp. 2d 257 (E.D.N.Y. 2007), the Court largely denied Defendant's motion to dismiss the ATA claims contained therein on the same grounds as the 2005 *Linde* decision.

On April 24, 2013, the Court, in a bench ruling incorporated herein by reference, largely denied Arab Bank's motion for summary judgment pursuant to Fed. R. Civ. P. 56, concluding that triable material issues of fact existed concerning Defendant's state of mind, whether each attack could be attributed to Hamas, and whether the Bank's conduct was causally related to each Plaintiff's injury.  The Court dismissed Plaintiffs' claims premised on aiding-and-abetting violations of other criminal statutes, concluding that the Second Circuit Court of Appeals decision in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) prohibits such claims.  In a subsequent separate Order dated May 10, 2013 (ECF No. 944), also incorporated herein by reference, the Court dismissed Plaintiffs' claims premised on civil (or common law) conspiracy, holding that in the wake of *Rothstein* and other relevant federal precedent, it was overwhelmingly likely that the Second Circuit would conclude that separate claims for conspiring to violate other criminal statutes were also barred.  As such, the following claims for relief in the First Amended *Linde* Complaint were dismissed on April 24, 2013:

- <u>Count One</u> (Aiding And Abetting the Murder, Attempted Murder and Serious Bodily Injuries to United States Citizens in Violation of 18 U.S.C. § 2332(A); 18 U.S.C. § 2332(B); 18 U.S.C. § 2332(C) and 18 U.S.C. § 2333);

---

[1]      These claims were paralleled in Count Seven (intentional infliction of emotional distress) of the *Litle* Complaint; and Counts Five and Eight of the *Coulter* Complaint.

- <u>Count Two</u> (Conspiracy to Commit Murder and Attempted Murder of United States Citizens in Violation of 18 U.S.C. § 2332(B) and § 2333).

Finally, at the April 24, 2013 oral argument, the Court inquired of Plaintiffs' counsel whether or not Plaintiffs intended to pursue the First Amended *Linde* Complaint's seventh claim for relief ("Committing Acts of International Terrorism in Violation of 18 U.S.C. § 2333"). Plaintiffs have determined that they do not intend to pursue this claim, because: (1) it is duplicative and redundant of Plaintiffs' other remaining claims; and (2) violations of §§ 2339A-C of the ATA are themselves acts of international terrorism under § 2331(1) for which liability attaches.  *See Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 111-14 (E.D.N.Y. 2010) (Trager, J.) (collecting cases).

As such, the following claims for relief set forth in the First Amended *Linde* Complaint remain for trial:

- <u>Count Three</u> – **Violation of 18 U.S.C. § 2339A** (Knowingly or intentionally providing material support or resources to be used in preparation for, or in carrying out, a violation of 18 USC § 2332 (killing, attempting or conspiring to kill a national of the United States while such national is outside the United States, or commits physical violence with either the intent to cause serious bodily injury to a national of the United States; or with the result that serious bodily injury is caused to a national of the United States))

- <u>Count Four</u> – **Violation of 18 U.S.C. § 2339B(1)** (knowingly providing material support or resources to a foreign terrorist organization, or attempting or conspiring to do so, with either (1) knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), (2) that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or (3) that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989)).

- <u>Count Six</u> – **Violation of 18 U.S.C. § 2339C** (unlawfully and willfully providing or collecting funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out— an act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population, or to compel a government or an international organization to do or to abstain from doing any act).

**(b)      Defendant's Statement of Defenses**

To prevail on the claims alleged in Counts Three, Four and Six of the *Linde* action, and similar counts alleged in each of the other actions identified in Section 1 above, each Plaintiff must prove, in addition to the threshold requirements that he or she is a U.S. national injured by an act of international terrorism, that:

(1) Hamas is responsible for the particular incident in which he or she was injured;

(2) Arab Bank (i) in violation of 18 U.S.C. § 2339A, provided material support to Hamas, knowing or intending that such material support was to be used in preparation or for the carrying out of a prohibited offense, or (ii) in violation of § 2339B, knowingly provided material support or resources to a designated foreign terrorist organization with the knowledge of its designation or that it engaged or engages in terrorism, or (iii) in violation of § 2339C, willfully provided or collected funds with the intention that such funds be used to carry out a prohibited offense; and

(3) Arab Bank's actions were a factual and proximate cause of Plaintiffs' injuries.

Plaintiffs cannot satisfy these burdens.  As a threshold matter, none of the Plaintiffs is able to prove that the incident with respect to which he or she claims injury was an act of international terrorism, because the purported motive of each assailant is either hearsay or a matter of speculation.  Furthermore:

(1) None of the Plaintiffs is able to prove that Hamas is responsible for the attack with respect to which he or she claims injury.  In their efforts to prove attribution, each Plaintiff relies on:  (i) websites that are acknowledged even by Plaintiffs' own experts to be unreliable; (ii) experts who nonetheless rely on those websites and other similarly unreliable and inadmissible hearsay evidence; and (c) speculation.  These sources do not satisfy the attribution element of each Plaintiff's claim.

(2) None of the Plaintiffs is able to satisfy his or her burden on the element of scienter. As to each of the remaining Counts at issue in each action identified in Section 1 above, Plaintiffs must prove that the Bank acted knowingly or intentionally within the meaning of 18 U.S.C. § 2339A, § 2339B, or § 2339C. Pursuant to the law of the case a showing of reckless conduct is insufficient.

(3) None of the Plaintiffs is able to establish that the routine financial services provided by Arab Bank was a proximate cause of his or her injuries. Plaintiffs have conceded, as stated at the hearing before the Court on summary judgment, that "we'll never be able to prove – not just because of bank secrecy, but in general – that [a terrorist] used this money to [commit a terrorist attack]." Hr'g Tr. 54:12-15, Apr. 24, 2013.[2]  Plaintiffs cannot prove that the Bank participated in

---

[2]      It has been, and remains Arab Bank's position that each Plaintiff must satisfy the strict but-for and direct causation standards set forth in *Rothstein v. UBS AG*, 708 F.3d 82, 94-97 (2d Cir. 2013), *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123-25 (2d Cir. 2013), and the Supreme Court precedent upon which both of those courts relied.  This Court has denied the Bank's summary judgment and reconsideration motions in which the Bank addressed this issue. Since this Court's rulings, the Supreme Court held that but-for causation is indispensable.  In *University of Texas Southwestern Medical Center v. Nassar*, No. 12-484, 2013 WL 3155234 (U.S. June 24, 2013), the Court noted that but-for causation "is a standard requirement of any tort claim" and explained that statutory "by reason of" language prevents an action from being "a cause of an event if the particular event would have occurred without it." As noted, Plaintiffs concede that they cannot satisfy this standard.  The Bank reserves all rights with regard to this issue of law.

the planning or execution of any of the twenty-four incidents at issue; that any of those incidents would not have occurred absent the banking services at issue; or that the Bank's provision of the banking services at issue was substantially or foreseeably related to any of the twenty-four incidents at issue. Further, Plaintiffs concede that the charitable organizations that they allege to be HAMAS-related performed lawful charitable services, and Plaintiffs are unable to prove that any financial services provided by the Bank were used by those organizations for anything other than lawful purposes.

The Bank, among other proofs, will establish that the financial services at issue in these actions were routine, lawful and legitimate, including (i) the processing of automated electronic funds transfers, as a correspondent bank for Arab National Bank, of transactions initiated by the Saudi Committee—a humanitarian organization established by the government of Saudi Arabia and as to which the United States expressed its support; (ii) the processing of automated electronic funds transfers for the benefit of individuals or organizations that were not blacklisted by governmental authorities; and (iii) the maintenance of accounts for charitable organizations that were not blacklisted by governmental authorities and that had been vetted, endorsed and funded by the United States.

The Bank also will establish that it implemented an extensive compliance program to ensure that its services were not available to terrorists.  The Bank's compliance program included, but was not limited to, its screening of accounts and transactions against blacklists required by the banking authorities applicable to each of the jurisdictions in which the Bank operated, during all periods of time relevant to these actions.

## 5.    EVIDENTIARY ISSUES RAISED BY DEFENDANT REGARDING THE TRIAL STRUCTURE

Pursuant to this Court's order dated May 24, 2013 (*Linde* ECF No. 952), evidentiary issues created by the trial structure are to be included in the pre-trial order.  This proceeding, as structured, orders the trial of 24 separate terrorist attacks unrelated in time or circumstance, with the sole exception that each is alleged to have been perpetrated by Hamas. The testimony and exhibits offered by Plaintiffs start at least 10 or more years before the first attack (March 28, 2001) and stretch to seven years after the last attack (September 24, 2004). Evidence of transactions which occurred years after the March 2001 attack has no relevance to the ATA elements of material support, scienter, knowledge or proximate cause for that attack. Evidence of transactions in 2004 might be relevant to an attack in 2004 but cannot be relevant to a 2001 attack.  Combining evidence as to the 24 attacks in one proceeding allows the admission of evidence that is irrelevant to most of them and therefore severely prejudices the Bank.  The Bank set out in detail the evidence which demonstrates this due process and evidentiary problem in its letter to the Court dated May 22, 2013 (*Linde* ECF No. 947).  A copy is annexed as **Exhibit B** to this pre-trial order. A copy of Plaintiffs' response letter to the Court dated May 23, 2013 (*Linde* ECF No. 950) is attached as **Exhibit C**.

The structure which combines for trial 24 separate attacks occurring over a three and a half year period leaves the Bank with no choice but to object on the grounds of due process, relevance and prejudice as to each of Plaintiffs' exhibits and witness's testimony.  For the reasons provided in their May 23 letter, Plaintiffs disagree that the ordered trial structure violates

due process, and further dispute Defendant's contention that evidence of transactions post-dating an attack are not relevant to issues of scienter and credibility.

## 6.   STATEMENT OF DAMAGES

(*A brief statement of the categories and amounts of damages claimed or other relief sought.*)

### (a)   Plaintiffs' Statement Regarding Damages

Plaintiffs are entitled to treble damages pursuant to 18 U.S.C. §2333(a).  In a Minute Order dated July 22, 2010, this Court ordered that the issue of damages (including demonstrating Plaintiffs' connections to particular attacks) will be bifurcated and tried separately from and after a trial on the issues of: (1) whether each attack can be attributed to HAMAS; (2) whether Defendant in fact provided material support to Hamas, and to terrorists or terrorism (including, without limitation, having engaged in terrorist activity as defined in section 212(a)(3)(B) of the Immigration and Nationality Act, and/or having provided support to persons and entities engaged in terrorism in contravention of that statute) in violation of §§2339A-C of the ATA; (3) whether the Bank provided such material support with a culpable state of mind; and (4) whether the Bank's conduct is proximately causally connected to each attack that injured each Plaintiff.  As such, the parties have not commenced or completed discovery on the issue of damages, including exchange of any expert reports.

Under the ATA, Plaintiffs may pursue the broadest range of available economic and noneconomic damages available.  *See Goldberg*, 690 F. Supp. 2d at 97 n.10 (observing "the history of the ATA evidences congressional intent that non-pecuniary damages be available in a suit under the ATA" and further observing that Congress intended to allow broad remedies under U.S. law, because "the deterrent effect of the legislation will be maximized if it is interpreted to subject terrorists to the broadest possible range of damages"); quoting *Estates of Ungar ex rel. Strachman v. Palestinian Authority*, 304 F. Supp. 2d 232, 267 (D.R.I. 2004).  As such, Plaintiffs will seek recovery for the following categories of injuries:

- Compensatory and monetary damages for physical injury, and costs of living with disabilities.

- Emotional injury, including severe mental anguish, trauma and emotional distress.

- Funeral expenses.

- Wrongful death.

- Lost income or wages.

- Loss of consortium.

- Solatium damages.

- The cost of these suits and attorneys' fees, as provided under § 2333(a).

**(b)     Defendant's Statement Regarding Damages**

For the reasons noted in Section 4(b) above, none of the Plaintiffs is entitled to the recovery of damages from Arab Bank, because it did not violate Sections 2339A, 2339B or 2339C of the Anti-Terrorism Act, nor was its provision of routine banking services a factual or proximate cause of any Plaintiff's injuries.  Because, among other reasons, damages discovery has not yet been completed, the Bank otherwise reserves all rights regarding all issues concerning damages.

## 7.     TRIAL OF THE CASE

**(a)     Plaintiffs' Statement**

Plaintiffs believe that this case should be tried by a jury.  Plaintiffs believe that the trial will take approximately 30-40 trial days, depending on certain evidentiary rulings by the Court. The majority of exhibits identified by Plaintiffs are transactional documents, most of which will be presented to the jury via summary exhibits pursuant to Fed. R. Evid. 1006.  Many of Plaintiffs' remaining exhibits will be offered to substantiate the contents of demonstratives.

Likewise, Plaintiffs do not anticipate ultimately calling all 54 witnesses at trial, but will be guided by evidentiary rulings the Court makes in connection with, *e.g.*, the admissibility of Israeli convictions of Hamas operatives for perpetrating the attacks at issue.  The majority of the witnesses identified by Plaintiffs pertain to proving attribution for each of the 24 attacks, and thus will be narrow in scope.  Plaintiffs further identified 20 current or former Arab Bank employees, 17 of which also were identified by Defendant and the Bank has indicated that some may not appear live at trial.

While Arab Bank has identified 833 exhibits and 40 witnesses, Plaintiffs believe that the majority of both exhibits and witness testimony are barred pursuant to prior rulings of the Court to be addressed in motions *in limine*.  Thus, once the Court performs its evidentiary gatekeeping function, Plaintiffs believe the case can be tried in a reasonable timeframe less than the 60 days estimated by Defendant.

**(b)     Defendant's Statement**

Arab Bank believes that this case should be tried by a jury.  Plaintiffs have identified 4,527 exhibits and 54 witnesses (many of whom will require translators at trial). Arab Bank has identified 833 exhibits and 40 witnesses (many of whom will also require interpreters at trial). Notwithstanding some overlap, given the number of witnesses and exhibits identified by the parties the Bank anticipates that the trial will require at least 60 trial days.

## 8.     CONSENT TO TRIAL BY MAGISTRATE JUDGE

**All parties have not consented to the trial of the case by a magistrate judge.**

or

All parties consent to the trial of the case by a magistrate judge.

9.    **STIPULATIONS OR STATEMENTS OF FACT OR LAW WHICH HAVE BEEN AGREED TO BY ALL PARTIES**

Attached as **Exhibit D** is a listing of statements of fact and/or law that have been agreed to by all parties.

10.    **FACT AND EXPERT WITNESS LIST**

(*A list of names and addresses of all witnesses, including possible witnesses who will be called only for impeachment or rebuttal purposes and so designated, together with a brief narrative statement of the expected testimony of each witness.  Only listed witnesses will be permitted to testify except when prompt notice has been given and good cause shown.*)

    (a)    **Plaintiffs' Listing of Witnesses**

        (i)    **Case-In-Chief Fact Witnesses[3]**

        A.    **Current and Former Arab Bank Employees, Officers, and Directors**

***Mr. Shukry Bishara***
Address: Unknown
Mr. Bishara testified in both his personal capacity and as Arab Bank's Fed. R. Civ. P. 30(b)(6) corporate designee regarding Arab Bank's corporate donations between 2000 and 2004 in support of the Second Intifada and the activities of the Bank's former Chairman in support of the Second Intifada. At the time of his deposition in November 2010, Mr. Bishara resided in the Kingdom of Jordan. He served as Arab Bank's Chief Banking Officer during part of the relevant period. Plaintiffs will introduce Mr. Bishara's testimony concerning his personal knowledge regarding the Beirut account of senior Hamas leader (and Specially Designated Global Terrorist) Osama Hamdan, and his sworn declaration to this Court on that subject. Plaintiffs will also introduce Mr. Bishara's testimony concerning Arab Bank's awareness during the relevant period of Hamas's status as a terrorist organization that committed terrorist acts.  Plaintiffs will also introduce Mr. Bishara's testimony regarding various documents that Arab Bank produced (including documents pertaining to the Saudi Committee for the Support of the Intifada al Quds) ("Saudi Committee"), and Mr. Tayseer Sadeq's active role running Arab Bank's compliance operations in the Palestinian Territories during the relevant period.

---

[3]    Because at the present time it is not clear whether Defendant will agree that any witness called live may be called live in the opposing party's case in chief without regard to the geographic limitations of trial subpoenas issued pursuant to Fed. R. Civ. P. 45, Plaintiffs reserve the right to amend this initial designation to advise whether a witness will be called live, and, if so, whether that witness's deposition testimony will be introduced solely for impeachment purposes.  Plaintiffs also refer to Defendant for the location information of each witness.

### *Mr. Nofal Barbar*

Address:  London, England

Mr. Barbar, who at the time of his December 2010 deposition resided in London, England, served as the Executive Vice President and Regional Manager of Arab Bank's New York branch from 1997 until 2005.  Plaintiffs will introduce Mr. Barbar's testimony concerning Arab Bank's New York Branch, Arab Bank's donation to an "Intifada" fund, his awareness of the Saudi Committee, as well as Arab Bank's entry in 2005 into consent orders with the OCC and FinCEN.

### *Mr. Theodore Scholtz*

Address: Unknown

Mr. Scholtz was Assistant Vice President for Operations at Arab Bank New York during the relevant period.  Mr. Scholtz resides and works in the State of New York.  Plaintiffs will introduce Mr. Scholtz's testimony regarding Arab Bank's New York branch's payment systems (and their interface and relationship with other of Arab Bank's global payment systems), the codes and contents of wire transfer systems, and explanations of terms and references in wire transfer documents, including whether the documents indicate that certain accountholders appear to be Arab Bank customers, and/or whether the documents indicate that Arab Bank facilitated funds transfers to identifiable individuals or organizations.

### *Mr. Tayser Sadeq*

Address: Unknown

Mr. Sadeq served as Financial Controller and Manager for Arab Bank's branches in Ramallah and its Chief Compliance Officer during the relevant time period.  At the time of his deposition in May 2007, Mr. Sadeq resided in the city of Jenin in the West Bank. Plaintiffs will offer Mr. Sadeq's testimony concerning Arab Bank's knowledge of Hamas, Hamas leaders, and Hamas organizations. Plaintiffs will also offer Mr. Sadeq's testimony regarding Arab Bank's conduct in connection with the Saudi Committee for the Support of the Intifada Al Quds, and payments facilitated by Arab Bank to individuals or entities alleged to be connected to, or part of, Hamas.

### *Mr. Abdel Hamid Shoman*

Address: Unknown

Mr. Shoman served as Arab Bank's Chairman and Chief Executive Officer until 2012, when he was replaced by Mr. Sabih al-Masri. At the time of his deposition in May 2010, Mr. Shoman resided in the Kingdom of Jordan. Plaintiffs will offer Mr. Shoman's testimony regarding Arab Bank's stated view of the State of Israel as "the occupying enemy" and other similar views Arab Bank expressed in its annual reports. Plaintiffs will also introduce Mr. Shoman's testimony regarding Arab Bank's knowledge concerning Hamas, Hamas leaders and organizations, and other Palestinian organizations, entities, and programs alleged to be connected to terrorism or terrorist organizations, including donations made by Arab Bank employees to programs intended to support the Second Intifada.  Plaintiffs will also offer Mr. Shoman's testimony regarding statements set forth in the official biography of Arab Bank's former Chairman and CEO, Abdul Hamid Shoman (Mr. Shoman's grandfather).

### *Mr. Ghalib Hantoly*
Address: Unknown

Mr. Hantoly served as Arab Bank's Gaza branch manager, and testified in his personal capacity as well as a Fed. R. Civ. P. 30(b)(6) corporate designee regarding Arab Bank's Gaza operations.  As of the time of his November 2010 deposition, Mr. Hantoly resided in the Gaza Strip.  Plaintiffs will offer Mr. Hantoly's testimony regarding Arab Bank's suspicious activity monitoring and internal/external reporting, as well as its conduct regarding account opening and monitoring.   Plaintiffs will also offer Mr. Hantoly's testimony concerning the roles and responsibilities of Mr. Sadeq and other senior Arab Bank risk management officers and employees.  Furthermore, Plaintiffs will also offer Mr. Hantoly's testimony regarding Arab Bank's knowledge of Hamas, Hamas leaders, and Hamas organizations.

### *Baker Alomari*
Address:  Unknown.

Mr. Alomari's work history with Arab Bank is extensive. He has served as Arab Bank's: Jenin Branch Manager (2005-present); head of the Jenin Branch's Credit Facilities Department (1996-2004); and head of Ramallah regional headquarters' Individual Credit Facilities Department (2004-2005). At the time of Mr. Alomari's May 2010 deposition he resided in the city of Jenin in the West Bank. Plaintiffs will offer Mr. Alomari's testimony that he was aware of Hamas, Palestinian Islamic Jihad, and the Al Aqsa Martyrs Brigades and knew of their presence in Jenin.  Plaintiffs will also introduce Mr. Alomari's testimony that he was made well aware of the violence involved with the Intifada.  Plaintiffs will also offer Mr. Alomari's testimony that he never investigated whether any of the people shown on the television news, marching through the streets, or depicted on posters throughout Jenin were doing business with Arab Bank.  Plaintiffs will also introduce Mr. Alomari's testimony regarding how Arab Bank allegedly performed its "Know Your Customer" ("KYC") practices, including what information it allegedly collected about its customers.

### *Emmanuel Caravanos*
Address: Unknown

Mr. Caravanos worked as Vice President of Operations for Arab Bank's New York Branch.  He has approximately 30 years of international fund transfers experience.  Mr. Caravanos was deposed in July 2005 as a Rule 30(b)(6) corporate designee for Arab Bank, and in his personal capacity in October 2007.  Plaintiffs will offer Mr. Caravanos's testimony that in his role as Vice President of Operations he had working knowledge of, or responsibility for, the fund transfers department, the treasury operations department, and check processing and collections.  Plaintiffs will also introduce Mr. Caravanos's testimony about various transactions involving Arab Bank's New York branch.  Plaintiffs will also offer Mr. Caravanos's testimony regarding his awareness of the violence relating to the Second Intifada happening in the Middle East.

### *Brian David Billard*
Address:  New Windsor, New York

Mr. Billard was the Controller and Head of Compliance for Arab Bank's New York Branch between 2000 and 2003. Plaintiffs will offer Mr. Billard's testimony regarding his role and responsibilities within Arab Bank. Plaintiffs also will offer Mr. Billard's testimony concerning the Saudi Committee, and will introduce Mr. Billard's testimony regarding Hamas "Prime Minister" Ismail Haniyeh and his interactions with Arab Bank.

### *David Blackmore*
Address: West Midlands, United Kingdom
Mr. Blackmore was the Head of Regulatory Compliance, Europe and the first Money Laundering Reporting Officer for Arab Bank's operations in the United Kingdom. Plaintiffs will offer Mr. Blackmore's testimony that he knew that: Hamas was a terrorist organization during the relevant time period; Hamas was designated a Specially Designated Terrorist in 1995; the London branch of Arab Bank held accounts for various Palestinian Zakat Committees; and the U.S.-designated chief Hamas fundraiser, Interpal, held an account at the Kensington Branch that was closed prior to the U.S. designation due to terrorism financing suspicions. Plaintiffs will also introduce Mr. Blackmore's testimony that the sentiment reflected in The Indomitable Arab and pamphlets entitled 'The Destroyed Villages of Palestine' were inappropriately political for the UK market and that he, and his chief executive, Mr. Beighton, refused to utilize those resources within the UK.

### *Jamal Sidqi Hurani*
Address: Unknown.
Mr. Hurani is a longtime employee and agent of Arab Bank. At the time of his May 2010 deposition Mr. Hurani resided in the city of Nablus in the West Bank. He worked at Arab Bank in Nablus and then Ramallah during the Second Intifada. His training was in computer science and his experience is in banking. He worked in the IT department beginning in the mid 1990's until 2004, when he became Manager of Arab Bank's Nablus branch. In 2008, Mr. Hurani was promoted to Head of Consumer Banking of Arab Bank in Ramallah. Mr. Hurani is a resident of Nablus in the West Bank. Plaintiffs will offer Mr. Hurani's testimony regarding his work in the IT Department and Arab Bank's system of payments to the families of suicide bombers and other "martyrs" from the Saudi Committee in Support of the Intifada al Quds.

### *Mazen Abu Hamdan*
Address: Unknown
Mr. Hamdan was Regional Manager for Arab Bank's branches in the Palestinian Territories beginning in July 2002 and continuing throughout the remainder of the relevant period. At the time of his November 2009 deposition, Mr. Hamdan resided in Amman, Jordan, and also maintained a residence in the city of Ramallah in the West Bank. Plaintiffs will introduce Mr. Hamdan's testimony that he was the principal person responsible for the Bank's operations in the Palestinian Territories. Plaintiffs may further introduce testimony that in his supervisory role, Mr. Hamdan was aware of: the Saudi Committee and the Bank's processing of Saudi Committee transactions, the Second Intifada in the Palestinian Territories and the attendant risks of terrorism financing, and Hamas's actions during the Second Intifada.

***Sabih Al-Masri***

Address: Unknown

Mr. Al-Masri became a member of Arab Bank's Board of Directors in 1998, and currently services as its Chairman.  He also served on the Bank's audit committee during the relevant time period.  At the time of his December 2006 deposition, Mr. Al-Masri resided in Amman, Jordan.  Plaintiffs will introduce Mr. Al-Masri's testimony about the Board's role in addressing terrorist financing risks during the Second Intifada, his knowledge of the Saudi Committee and the Arabic term for "martyrdom operations", as well as Hamas's terrorist activities during the relevant time period. In connection with Mr. Al-Masri's status as Chairman of the Board of Palestine Telecommunication Corp., Plaintiffs will also introduce his testimony about his role in its Social Responsibility Fund, including its donations to various activities in the Palestinian Territories.

***Fazwan Shukri***

Address: Unknown

Mr. Shukri was Head of Global Operations for the Bank during the relevant period, and testified as Arab Bank's Fed. R. Civ. P. 30(b)(6) corporate designee concerning Arab Bank's activities involving the Saudi Committee. At the time of his April 2007 deposition, Mr. Shukri resided in Amman, Jordan.  Plaintiffs will introduce Mr. Shukri's testimony concerning those activities of the Bank, including its communications with the Saudi Committee, Arab National Bank, and third parties (including alleged Hamas organizations in the West Bank and Gaza Strip), its processing of transactions originating from the Saudi Committee, and its due diligence (or lack thereof) with regards to the Saudi Committee and/or its beneficiaries.

***George Kawwas***

Address: Unknown

Mr. Kawwas was the Branch Manager of Arab Bank's Bethlehem branch beginning in 1997 and continuing throughout the relevant period.  At the time of his May 2010 deposition, Mr. Kawwas resided in the town of Bethlehem in the West Bank.  Plaintiffs will introduce Mr. Kawwas's testimony concerning his responsibilities as branch manager in the Palestinian Territories, including his attendance at branch manager group meetings, and reports he received concerning large customers of his branch.   Plaintiffs may also introduce Mr. Kawwas's testimony concerning account-opening procedures for his branch, as well as KYC procedures for existing customers.  Plaintiffs will also offer his testimony as to how his branch allegedly processed wire transfers and his knowledge of the Second Intifada (and Hamas's role in the Intifada) and the impact it had on branch operations, along with his knowledge (or lack thereof) of the Saudi Committee.

***Assad Saleh***

Address: Unknown

Mr. Saleh was the Head of Arab Bank's Central Incoming Transfer Unit in Ramallah from 1997-2005, and thereafter joined the Bank's supervisory operations in Ramallah. At the time of his November 2009 deposition Mr. Saleh resided in Jamma'in, in the greater Nablus area in the West Bank. Plaintiffs will introduce Mr. Saleh's testimony concerning

Arab Bank's alleged procedures for processing wire transfers during the relevant time period, including those originated by the Saudi Committee. Plaintiffs will also introduce Mr. Saleh's testimony concerning his participation in correspondence exchanged with Arab National Bank (where Mr. Saleh had previously worked) pertaining to the Saudi Committee and  his knowledge of the Second Intifada.

### *Mohammad Al-Tahan*
Address:  Jerusalem, Israel

Mr. Al-Tahan has worked for Arab Bank since 1975 and has been a manager since 1996. He was the Manager of Operations in the Palestinian Territories from 1999-2004. At the time of his May 2007 deposition Mr. Al-Tahan maintained residences in Amman, Jordan and Jerusalem. Plaintiffs will introduce  Mr. Al-Tahan's testimony  that he had notice and knowledge regarding the Second Intifada and the violence involved with it from a variety of sources throughout the relevant time period.  Plaintiffs will also introduce Mr. Al-Tahan's testimony  that he was aware that Arab Bank in the Palestinian Territories was effectuating transfers sent from Arab National Bank on behalf of the Saudi Committee in Support of the Al Quds Intifada.  Plaintiffs will also offer Mr. Al-Tahan's testimony  that he personally received lists of outward transfers to be paid for martyrs, and that  Arab Bank asked Arab National Bank for information about charities associated with the Saudi Committee in Support of the Al Quds Intifada.  Plaintiffs will also offer Mr. Al-Tahan's testimony as to how family members of martyrs received notice and how they claimed monies by presenting proper documentation at the branch.

### *Teresa Pacheco*
Address: Unknown

Ms. Pacheco originally joined Arab Bank as a secretary in 1991.  She eventually became a Supervisor of Compliance in the private banking section at Arab Bank New York.  She resigned her position in October of 2004. Plaintiffs will offer Ms. Pacheco's testimony that while working for Arab Bank she attended multiple conferences in her capacity as the Supervisor of Compliance and that she retained information and materials from these conferences which she shared with her superiors at Arab Bank regarding a variety of topics including terrorism financing, terrorist organizations, and correspondent banking. Plaintiffs will also offer Ms. Pacheco's testimony that Arab Bank routinely failed to monitor for potentially suspicious activity and that manual review did not adequately detect suspicious transactions.   Plaintiffs will also present Mr. Pacheco's testimony regarding specific concerns she had while she was Supervisor of Compliance relating to wire transfers and why she had such concerns.  Additionally Plaintiffs will also offer her testimony concerning her understanding of geographical risks presented in the regions where Arab Bank branches were located.

### *Rabab Safiddiene*
Address: Unknown

This witness (whose identity is confidential per Court order) was designated as a Rule 30(b)(6) corporate designee for Defendant regarding the Beirut account of senior Hamas leader (and Specially Designated Global Terrorist) Osama Hamdan, including testimony concerning Mr. Shukri Bishara's sworn declaration to this Court concerning that account.

Plaintiffs will offer the witness's testimony concerning payments processed for the benefit of "Hamas," which were approved by a senior Arab Bank official in Beirut.

### Mohammed Dabbour

Address: Amman, Jordan

Mr. Dabbour is the Director of Regulatory Compliance of Arab Bank, a position he has held since 2007. From 1995 through 2002, Mr. Dabbour, a certified public accountant, was one of Defendant's principal external auditors, and was thereafter employed at a Jordanian affiliate of Deloitte & Touche and oversaw Deloitte's audit of all of Arab Bank's branches in Jordan, including its Amman headquarters. At the time of his November 2010 deposition, Mr. Dabbour resided in Jordan. Plaintiffs will offer Mr. Dabbour's testimony concerning his understanding of Hamas, Palestinian terrorist organizations, and the risks presented to financial institutions and Defendant by such organizations. Plaintiffs will also present Mr. Dabbour's testimony concerning Defendant's account, customer, and transaction profiling and monitoring conduct, including Arab Bank's KYC conduct. In addition, Plaintiffs will present Mr. Dabbour's testimony concerning inclusion of specific individuals and entities on Arab Bank blacklists, including accountholders whose accounts with Arab Bank were seized by the Israeli military in 2004. Plaintiffs will also present Mr. Dabbour's testimony in response to questions posed by Plaintiffs concerning the identities of particular accountholders, including Mr. Dabbour's refusal to answer such questions on the ground of foreign bank secrecy and privacy laws.

### B.    Fact Witnesses With Knowledge of the 24 Attacks

### Felix Ferish

Address:  Givaataim, Israel.

As a journalist, Mr. Frisch came to and saw the immediate aftermath of the terror attacks on:  (1) Bus No. 189 near Emmanuel on December 12, 2001; and (2) the Dolphinarium on June 1, 2001.  Mr. Frisch will testify about facts he knows as an eyewitness to the immediate aftermath of those two attacks, including a detailed description of each attack scene.  As a journalist who worked at each of those two attack sites, Mr. Frisch will also testify about his investigation and reporting of facts about those two attacks.

### Eli Zamir

Address: Jerusalem, Israel.

As a police officer, Mr. Zamir came to and observed the immediate aftermath of the terror attacks on: (1) Kiryat Arba, March 7, 2003; and (2) the Tel Romeda, Hebron Shooting attack on October 22, 2003.  Mr. Zamir will testify about facts he knows as an eyewitness.  As a police officer who worked at each of those two attack sites during the immediate aftermath of each, Mr. Zamir will also testify about the sequence of events, type of ammunition and explosives that were used, and damage that was caused, during the attacks.

### Ora Cohen

Address: Jerusalem, Israel.

Ms. Cohen was riding with her family on Bus No. 2 in Jerusalem when it exploded. Ms. Cohen, her former spouse and five children were injured in the attack, which took place on August 19, 2003. Ms. Cohen will testify about what she saw at the attack, including certain identification signs with relation to the suicide bomber as well as to his boarding station and location within the bus.

### B'shava Zarkowsky
Address: Spring Valley, New York
Ms. Zarkowsky witnessed and was injured in the Bus No. 2 bombing that took place on August 19, 2003 in Jerusalem. She is a Plaintiff in the first trial. Ms. Zarkowsky will testify as an eyewitness to the scene of the attack and aftermath.

### Eyal Tam
Address: Israel.
Mr. Tam will testify that he arrived while the terrorist attack at Gush Katif was taking place on March 7, 2002; that he had been called to the scene of the attack a short while after the terrorist began engaging in gunfire; and that he personally shot the terrorist. Mr. Tam will also describe the location of the attack, the position of the terrorist, and the ammunition used during the course of the attack.

### David Wilder
Address: Kiryat Arbah, Israel.
As a journalist, Mr. Wilder came to and saw the immediate aftermath of the terror attack at Tel Romeda on October 22, 2003. Upon his arrival to the scene of the attack, Mr. Wilder found the body of the dead terrorist and took photographs of the terrorist's body and can identify the terrorist's body in those photographs. Mr. Wilder will testify about facts he knows as an eyewitness to the immediate aftermath, including a detailed description of the scene, as well as the dead terrorist and identification marks. As a journalist, Mr. Wilder will also testify about his investigation and reporting of facts about that attack.

### Efrat Weiss
Address: Jerusalem, Israel.
As a journalist, Ms. Weiss came to and observed the immediate aftermath of the terror attacks at: (1) Café Hillel, Jerusalem, on September 9, 2003; (2) Café Moment on March 9, 2002; (3) Hebrew University, Jerusalem, on July 31, 2002; and (4) Ben Yehuda St., Jerusalem, on December 1, 2001. She will testify about facts she knows as an eyewitness, including a detailed description of each attack scene. As a journalist, Ms. Weiss will also testify about her investigation and reporting of facts about these attacks.

### Altea Steinherz
Address: Jerusalem, Israel
Ms. Steinherz witnessed and was injured in the Ben Yehuda bombing that took place on December 1, 2001. She is a Plaintiff in the first trial. Ms. Steinherz will testify as an eyewitness to the scene of the attack and aftermath.

### Osnat Dudu

Address: Jerusalem, Israel.

Ms. Dudu witnessed and was injured in the terror attack at Café Hillel in Jerusalem on September 9, 2003.  Ms. Dudu was working at the time as a manger in Café Hillel when she noticed a suspicious-looking person who turned out to be the suicide bomber.  Only a few seconds after she noticed him, a huge explosion occurred.  Ms. Dudu will testify about the facts she knows as an eyewitness, as well as discuss the appearance of the suicide bomber.

### Inbal Rose

Address: Ella, Israel.

Ms. Rose was an eyewitness who saw the immediate aftermath of the terror attacks at: (1) Café Moment on March 9, 2002; and (2) Sbarro Pizzeria on August 9, 2001.  Ms. Rose will testify about facts she knows as an eyewitness to the immediate aftermath of those two attacks, including a detailed description of each attack scene.

### Shalom Sabag

Address: Jerusalem, Israel.

Mr. Sabag was an eyewitness who saw the immediate aftermath of the terror attack on Bus No. 32 in Jerusalem on June 18, 2002.  Mr. Sabag was driving his car when he saw through the rearview mirror a bus exploding.  He quickly stepped out of the car and provided assistance to the injured victims. Mr. Sabag will testify about facts he knows as an eyewitness to the immediate aftermath of the attack, including a detailed description of the attack scene.

### Yitzhak Arogety

Address: Jerusalem, Israel.

Mr. Arogety witnessed and was injured in the terror attack at Hebrew University in Jerusalem on July 31, 2002.  As a university employee, he was having lunch at the campus cafeteria when there was an explosion.  Later, he discovered that he personally knew and had met the terrorist who had planted the bomb at the cafeteria and was a contract worker at the university.  Mr. Arogety will testify about facts he knows as an eyewitness to the attack, the identity of the terrorist and location where the terrorist planted the explosives.

### David "Dudi" Bar

Address: Kfar Saba, Israel.

As a police officer, Mr. Bar observed the immediate aftermath of the terror attack at Mike's Place in Tel Aviv on April 30, 2003.  Mr. Bar will testify about facts he knows as an eyewitness to the immediate aftermath of the attack, including a detailed description of the attack scene and personal knowledge he acquired concerning the terrorists.  As a police officer who conducted an investigation about the attack, Mr. Bar read, reviewed, and relied upon police and forensic reports in connection with his investigation.  He will testify about the sequence of events, identity of the terrorists, type of explosive that was used, and damage that was caused during the attack.

### Shuki Brif

Address: Bene-Beraq, Israel.

As a Zaka volunteer, Mr. Brif saw the immediate aftermath of the terror attacks at: (1) Sheffield Club, Rishon LeTzion, on May 7, 2002; (2) Mike's Place, Tel Aviv on April 30, 2003; (3) Bus #4 Tel Aviv, on September 19, 2002; and (4) Dolphinarium, Tel Aviv, on June 1, 2001. As a Zaka volunteer, Mr. Brif arrived to the attack sites not long after the attacks in order to collect the remains of the bodies and bring them to proper burial. Mr. Brif will testify about facts he knows as an eyewitness, including a detailed description of each attack scene.

### Joshua Faudem
Address: Jerusalem, Israel.
Mr. Faudem witnessed and was injured in the terror attack at Mike's Place in Tel Aviv on April 30, 2003. He is a Plaintiff in the first trial. Mr. Faudem was at the pub during the explosion. He will testify about facts he knows as an eyewitness, as well as identification marks of the suicide bomber and personal knowledge he obtained as part of the documentary film he prepared concerning the attack and its aftermath.

### Ovadia Sa'ar
Address: Kiryat Haim, Israel.
Mr. Sa'ar was an eyewitness to the attack that took place on Bus No. 37 in Haifa on March 5, 2003. Mr. Sa'ar was driving a bus when he heard a very loud explosion that shook his own bus. He will testify as an eyewitness about the scene of the attack, the condition of the bus, and discuss the appearance of the suicide bomber.

### Alex Haimov
Address: Megedim, Israel.
Mr. Haimov witnessed and was injured in the terror attack on Bus No. 37 in Haifa on March 5, 2003. Mr. Haimov boarded the bus at the same station as the suicide bomber. About 20-30 minutes after they had boarded, there was an explosion on the bus. Mr. Haimov will testify as an eyewitness to the scene of the attack, and discuss the appearance of the suicide bomber.

### Nachum Babkoff
Address: Tel Aviv, Israel (Yarkon region police station).
As a police officer, Mr. Babkoff saw the immediate aftermath of the terror attacks at: (1) the Dolphinarium in Tel Aviv on June 1, 2001; and (2) Bus No. 4 on Allenby Street in Tel Aviv on September 19, 2002. Mr. Babkoff will testify about facts he knows as an eyewitness to the immediate aftermath of those two attacks, including a detailed description of each attack scene. As a police officer, Mr. Babkoff will also testify about his investigation of facts about those two attacks.

### Avraham Mantoor
Address: Ramla, Israel (Central region police station).
As a police officer, Mr. Mantoor saw the immediate aftermath of the terror attacks on: (1) the Sheffield Club, Rishon LeTzion, on May 7, 2002; (2) Kfar Saba Station on March 28, 2001; and (3) Park Hotel, Netanya, on March 27, 2002. Mr. Mantoor will testify about facts he knows as an eyewitness to the immediate aftermath of those three attacks, including a detailed description of each attack scene. He will provide testimony as a police officer who conducted investigations regarding these attacks. Within the capacity

of his investigations, he read, reviewed and relied upon police and forensic reports that were prepared about each attack and will also to testify about the sequence of events, type of ammunition and explosives that were used, and damage and sabotage that were caused during each attack.

**_Yael Shahar_**
Address: Netanya, Israel.
Ms. Shahar was working as a waitress on the evening of the attack that took place at Park Hotel, Netanya on March 27, 2002.  Ms. Shahar will testify as an eyewitness to the scene of the attack and aftermath, and testify about the appearance of the suicide bomber.

**_Hannanel Touito_**
Address: Petach Tikva, Israel.
Mr. Touito witnessed and was injured in the attack that took place at the Kfar Saba Station on March 28, 2001.  Mr. Touito was waiting with his friends for a ride to take them to school when he noticed someone suspicious before the explosion.  Mr. Touito will testify as an eyewitness to the scene of the attack and aftermath, and testify about the appearance of the suicide bomber.

**_Vera Lovesky_**
Address: Petach Tikva, Israel.
Ms. Lovesky witnessed and was injured in the attack that took place on Bus No.6 in French Hill, Jerusalem on May 18, 2003.  While riding the bus to work, she noticed a man who seemed suspicious and soon thereafter detonated the explosives he was carrying.  Ms. Lovesky will testify as an eyewitness to the scene of the attack and aftermath, and testify about the appearance of the suicide bomber.

**_Micha Shamir_**
Address: Mevaseret Tzion, Israel.
Mr. Shamir witnessed the attack that took place at Sbarro Pizzeria in Jerusalem on August 9, 2001. Mr. Shamir was near the restaurant when the attack occurred and, since he is a doctor, he provided assistance to the injured victims. Mr. Shamir will testify as an eyewitness to the scene of the attack and aftermath.

**_Sarri Singer_**
Address: New York, New York
Ms. Singer witnessed and was injured in the attack that took place on Bus No. 14A in Jerusalem on June 11, 2003. She is a Plaintiff in the first trial.  Ms. Singer will testify as an eyewitness to the scene of the attack and aftermath.

**_Jacob Steinmetz_**
Address: Efraim, Israel
Mr. Steinmetz witnessed and was injured in the shooting attack that took place on Route 60 on January 29, 2003. He is a Plaintiff in the first trial.  Mr. Steinmetz will testify as an eyewitness to the scene of the attack and aftermath.

**_Eugene Goldstein_**
Address: Lake Worth, Florida

Mr. Goldstein witnessed and was injured in the shooting attack that took place on Route 60 on June 20, 2003. He is a Plaintiff in the first trial. Mr. Goldstein will testify as an eyewitness to the scene of the attack and aftermath.

***Erik Schechter***
Address: Brooklyn, New York
Mr. Schechter witnessed and was injured in the bombing that occurred on Bus No. 19 in Jerusalem on January 29, 2004. He is a Plaintiff in the first trial. Mr. Schechter will testify as an eyewitness to the scene of the attack and aftermath.

### C.   Additional Fact Witnesses

***Colin Hames***
Address: Jerusalem, Israel.
Mr. Hames will testify regarding his role in the civil administration in Judea and Samaria, the data collection and analysis performed by the civil administration in Judea and Samaria during the years 2000-2004 and the chain of custody of certain documents seized by the IDF from organizations in the course of Operation Defensive Shield.

### (ii)   Case-In-Chief and Rebuttal Expert Witnesses

***Mr. Ronni Shaked***
Address: P.O. Box 85759, Mevasseret Zion, Israel 90805
Mr. Shaked worked for the Israel Security Agency ("ISA") between 1969 and 1982, rising to the rank of Commander of the Jerusalem Sector and Commander of the Ramallah Sector. In a February 6, 2013 Order reported *at Linde v. Arab Bank plc*, __ F. Supp. 2d. ___, 2013 WL 500637 (E.D.N.Y. Feb. 6, 2013), Mr. Shaked was admitted as an expert witness for these cases. *Id.* at *11. At trial Mr. Shaked will provide expert testimony concerning:

(1)   whether Hamas was involved in the recruiting, planning and perpetration of each of the 24 attacks at issue in this trial;

(2)   the methods and channels Hamas employs to claim credit for terrorist attacks, and the reasons Hamas openly acknowledges its involvement in, and/or perpetration of, terrorist attacks;

(3)   the methods the ISA and other Israeli law enforcement agencies and offices utilize to investigate, document, and report upon terrorist attacks, including attribution of attacks to particular terrorist organizations;

(4)   Hamas's ideology and Charter, and their role in planning and carrying out terrorist attacks;

(5)   Hamas's infrastructure and chain of command, and their role and relationship to Hamas's paramilitary organizations;

(6)   the organization and structure of Hamas's paramilitary organizations; and

(7)   the methods Hamas utilizes to design and deploy an economic support system to recruit and/or replace paramilitary operatives.

### *Mr. Evan Kohlmann*

Address:  New York, NY

Mr. Kohlmann is a private international terrorism consultant who specializes in tracking Al-Qaeda, Hamas, and other terrorist movements. Mr. Kohlmann has been admitted as an expert witness in these cases.  *Linde*, 2013 WL 500637, at *12.  At trial Mr. Kohlmann will provide expert testimony regarding:

(1)      Hamas's primary websites and internet forums, setting forth their provenance and explaining Hamas's strategy and practice in using them, particularly with respect to claiming credit for terrorist attacks that it has committed; and

(2)      Whether Hamas's public claims of responsibility for the 24 attacks giving rise to the Plaintiffs' injuries are authentic, credible and reliable.

### *Mr. Nelson Everhardt*

Address:  6015 Leeson Lane, Charlotte NC 28270

Mr. Everhardt is President of Everhardt & Associates, LLC, an independent consulting firm specializing in proactive compliance solutions for the financial services industry. He previously served as Senior Vice President and Corporate Compliance Executive for Bank of America.  In a May 28, 2013 Order (ECF No. 954, referred to herein as the "May 28 Order") Mr. Everhardt was admitted as an expert witness in these cases.  At trial Mr. Everhardt will provide expert testimony defining and explaining certain banking concepts, terminology and processes jurors are unlikely to be familiar with.  He will provide an overview of account-opening procedures and customer identification procedures, explain terminology such as KYC policies, "Fedwire," "SWIFT," and "CHIPS," and explicate basic banking concepts such as correspondent banking and suspicious transaction reporting.  He will also testify as to what a SAR is, and what he understands the term "suspicious activity" to be.  In addition, as set forth in the May 28 Order at *9, if the Bank's expert witness Anne Vitale is ultimately allowed to offer testimony regarding industry standards and practices, Mr. Everhardt may also offer opinions in those regards.

### *Mr. Wayne Geisser*

Address: 150 South Independence Mall, West Philadelphia, PA 19106

Mr. Geisser is a Certified Public Accountant, Certified Valuation Analyst, and Certified Fraud Examiner, who is certified in Financial Forensics by the American Institute of Certified Public Accountants ("AICPA").  He previously served as Branch Chief in the Securities and Exchange Commission's ("SEC") Division of Enforcement. The Court previously approved Mr. Geisser as a summary expert witness. *Linde*, 2013 WL 500637, at *13-14.  At trial Mr. Geisser will summarize and analyze certain transactional records Arab Bank produced in discovery, processed through its New York branch and/or initiated on behalf of the Saudi Committee, and present summary evidence under Fed. R. Evid. 1006, and/or pedagogical devices under Fed. R. Evid. 611(a).

### *Dr. Matthew Levitt*

Address:  1828 L Street, NW, Suite 1050, Washington, DC 20036

Dr. Levitt previously served as Deputy Assistant Secretary for Intelligence and Analysis at the Treasury Department, and as an Intelligence Research Specialist in the Federal

Bureau of Investigation's ("FBI") International Terrorism Intelligence Unit.  He is currently a Senior Fellow and Director of the Stein Program on Terrorism, Intelligence and Policy at The Washington Institute for Near East Policy ("WINEP"), and Professorial Lecturer in International Relations and Strategic Studies at Johns Hopkins University's School of Advanced International Studies ("SAIS").  Dr. Levitt has been admitted as an expert witness in these cases.  *Linde*, 2013 WL 500637, at *5.  At trial Dr. Levitt will offer expert testimony regarding Hamas's creation and organizational structure, including its leadership and network of social institutions known as the *da'wa* (all of those discussed having maintained accounts with Arab Bank) with a particular emphasis on the international donor network that funds Hamas's *da'wa* (most of which either maintained accounts with Arab Bank or processed funds transfers to Hamas through Arab Bank).

Dr. Levitt will also be prepared to offer testimony rebutting the opinions of Defendant's expert witnesses Dr. Beverley Milton-Edwards and Mr. Jonathan Benthall, focusing on methodological, sourcing, research errors and inconsistencies that, in Dr. Levitt's opinion, render their opinions and testimony unreliable.

### *Mr. Arieh Spitzen*
Address: Jerusalem, Israel

Mr. Spitzen previously served as head of the Palestinian Affairs Department ("PAD") in the Coordinator of Government Activities in the Territories ("COGAT"), part of the Israeli Ministry of Defense.  Mr. Spitzen has been admitted as an expert witness for these cases.  *Linde*, 2013 WL 500637, at *2-5.  At trial Mr. Spitzen will offer expert testimony which:

(1)     identifies and discusses senior Hamas leaders who maintained accounts at Arab Bank and cumulatively received millions of dollars in funds to their accounts;

(2)     explains that specific Arab Bank institutional customers, including al-Mujama al-Islami – Gaza (the Islamic Center – Gaza), al-Jam'iya al-Islamiya – Gaza (the Islamic Society – Gaza), al-Salah Islamic Society – Gaza, and al Nur Prisoner Society – Gaza are key Hamas institutions in the Gaza Strip;

(3)     explains the Saudi Committee's relationship with Hamas and the Union of Good (the latter an SDGT that constitutes a primary Hamas fundraising mechanism via an umbrella of foreign fundraisers);

(4)     identifies and discusses financial payments Arab Bank facilitated on behalf of the Saudi Committee to:
    a.     Hamas terrorists directly (and terrorists from other groups);
    b.     Hamas suicide bombers' families (and suicide bombers' families from other groups);
    c.     The families of so-called "martyred" Hamas terrorists (and so-called "martyred" terrorists from other groups); and
    d.     The families of Hamas prisoners and terrorists belonging to other terrorist groups; and

(5)     explains how Hezbollah's al-Shahid Foundation provided direct financial benefits through the al-Ansar Society – via Arab Bank – to suicide bombers' families and the families of other so-called martyrs associated with various terrorist groups.

24

### *Dr. Timur Kuran*

Address:  Duke University, 213 Social Sciences Building, Box 90097 Durham, NC 27708.

Dr. Kuran is a Professor of Economics and Political Science, and Gorter Family Professor of Islamic Studies, at Duke University, specializing in economics, political science, Islam, and the Middle East. Dr. Kuran has been admitted as an expert witness for these cases.  *Linde*, 2013 WL 500637, at *10.  At trial Dr. Kuran will offer expert testimony rebutting the testimony of Arab Bank expert witnesses Beverley Milton-Edwards and Jonathan Benthall to the extent either is permitted to provide expert opinions on the definition of the term, concept, and practice of "zakat."

### *Mr. Jonathan Winer*

Address: APCO Worldwide, 700 12th Street, N.W., Suite 800, Washington, D.C. 20005

Mr. Winer previously served as Deputy U.S. Assistant Secretary of State for International Law Enforcement and is now a Senior Vice President of APCO Worldwide, where he specializes in domestic, foreign, and cross-border financial regulatory issues, including the regulation of financial institutions to combat money laundering ("AML") and terrorist finance ("CFT"), both domestically and internationally.  Mr. Winer has been admitted as an expert witness for these cases. May 28 Order at *7-8.  In the event Arab Bank expert witness Anne Vitale is permitted to testify at trial, Mr. Winer will offer expert testimony rebutting her opinions concerning U.S. and foreign banking standards.

**(b)**     **Defendant's Listing of Witnesses**[4]

      **(i)**     **Case-In-Chief Fact Witnesses**[5]

**Al-Masri, Sabih** (Chairman of the Board; former Deputy Chairman)

Address:  c/o DLA Piper LLP (US)
               1251 Avenue of the Americas
               New York, NY 10020

---

[4]     Pursuant to the Court's Individual Motion Practices, the parties' respective motions *in limine* will not have been ruled upon at the time of the parties' submission of the Joint Pre-Trial Order.  Accordingly, to fully preserve its rights with respect to the subject matter of each motion *in limine* to be identified by the Bank, the Bank has designated live witnesses and deposition testimony that it may introduce at trial in the event any such motion *in limine* is denied by the Court.  If the subject matter of any such testimony or designation is addressed by a motion ultimately resolved in the Bank's favor, the Bank reserves the right to redact or withdraw any such testimony accordingly.  The Bank's identification of such testimony is not intended to waive, and the Bank expressly reserves, its objections to the presentation of such subject matter at trial.

[5]     Arab Bank anticipates that each of these witnesses will be available to testify live at trial. To the extent, however, that any of these witnesses is unexpectedly unable to testify at trial, the Bank reserves the right to designate deposition testimony for any such witness.  See designations of testimony separately provided herewith.

Mr. Al-Masri is expected to testify generally about Arab Bank's history, ownership, organization and structure, opposition to terrorism, Arab Bank's interaction with its regulators, and various aspects of its compliance program. Mr. Al-Masri also may testify about the Shoman family and Arab Bank employee charitable donations during the Second *Intifada*.

**Abed, George** (Former Governor of Palestinian Monetary Authority ("PMA"))

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Abed is expected to testify about the Welfare Association, the IMF, the PMA, the PMA's regulation of Arab Bank, the PMA's relationship with the United States and other governmental and non-governmental bodies, and Arab Bank's cooperation with the Central Bank of Israel. Mr. Abed also is expected to testify about bank privacy laws.

**Barbar, Nofal** (Former Regional Manager, Arab Bank-New York)

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Barbar is expected to testify about various aspects of Arab Bank's compliance program and the history and operational structure of Arab Bank-New York.

**Paz, Ilan** (Retired Brigadier General – Israel Defense Forces ("IDF"))

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

General Paz is expected to testify about the need for humanitarian relief in the Palestinian Territories during the Second *Intifada*, the IDF seizure and confiscation of accounts, and Israel's interactions with and oversight of Arab Bank.

**Rundell, David** (Former US Charge d'Affaires & Deputy Chief of Mission in Saudi Arabia)

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Rundell is expected to testify about Saudi Arabia's cooperation with the United States in opposing terrorism and the Saudi Committee.

**Billard, Brian** (Deputy Manager/Controller, Arab Bank-New York)

Address:  c/o DLA Piper LLP (US)
          1251 Avenue of the Americas
          New York, NY 10020

Mr. Billard is expected to testify about various aspects of Arab Bank New York's compliance program, Arab Bank's correspondent banking relationships, electronic funds transfers, and the Bank's interaction with its regulators in the United States.

**Safieddine, Rabab** (Manager, Arab Bank-Lebanon)

Address:  c/o DLA Piper LLP (US)
          1251 Avenue of the Americas
          New York, NY 10020

Ms. Safieddine is expected to testify about various aspects of Arab Bank's compliance program, Lebanese banking laws, and the Hamdan account.

**Bishara, Shukry** (former Chief Banking Officer of Arab Bank plc and Regional Manager of Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
          1251 Avenue of the Americas
          New York, NY 10020

Mr. Bishara is expected to testify about Arab Bank's branch offices in the Palestinian Territories, Arab Bank's interactions with its regulators and the Government of Israel, various aspects of Arab Bank's compliance program, the regulation of Arab Bank by the PMA, Arab Bank's correspondent banking relationships, the Saudi Committee, the Hamdan account, the Shoman family, and employee charitable donations during the Second *Intifada*.

**Shamni, Gadi** (Commander of IDF Forces in Judea and Samaria)

Address:  c/o DLA Piper LLP (US)
          1251 Avenue of the Americas
          New York, NY 10020

General Shamni is expected to testify about the letter from the IDF, Office of the Attorney General, Judea and Samaria to Arab Bank, dated September 2, 2009.

**Shmilovitch, Pinhas** (Israel Securities Authority)

Address:  c/o DLA Piper LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020

Mr. Shmilovitch is expected to testify about the Israel Securities Authority, its counter-terrorism agenda, and the alleged Hamas "*da'wa*."

**Kawwas, George** (Branch Manager, Bethlehem (Arab Bank Palestine))

Address:  c/o DLA Piper LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020

Mr. Kawwas is expected to testify about various aspects of Arab Bank's compliance program, wire transfer logistics, branch operations and practices, and transactions involving charities and the Saudi Committee.


**Caravanos, Emmanuel** (First VP of Operations, Arab Bank-New York)

Mr. Caravanos is expected to testify about various aspects of Arab Bank-New York's operations, its compliance practices and procedures, including its automated compliance software, and its account opening procedures.

Address:  c/o DLA Piper LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020

**Dabbour, Mohammed** (Director of Regulatory Compliance)

Address:  c/o DLA Piper LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020

Mr. Dabbour is expected to testify about various aspects of Arab Bank's compliance practices and procedures, the IDF seizure and confiscation of accounts, and the Hamdan account.

**Dagan, Yair** (Banking Industry Consultant in Israel)

Address:  c/o DLA Piper LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020

Mr. Dagan is expected to testify about Israeli blacklists and banking and compliance practices.

**Weinberg, Harel (Maj.)**

Address:  c/o DLA Piper LLP (US)
            1251 Avenue of the Americas
            New York, NY 10020

Major Weinberg is expected to testify about the 2009 IDF letter.

**Gnehm, Edward** (Former U.S. Ambassador to Jordan)

Address:  c/o DLA Piper LLP (US)
            1251 Avenue of the Americas
            New York, NY 10020

Mr. Gnehm is expected to testify about the Kingdom of Jordan's ownership interest in Arab Bank and the Kingdom's cooperation with the United States in opposing terrorism, as well as Arab Bank's role in the Jordanian economy.  Mr. Gnehm also is expected to testify about the November 24, 2011 diplomatic cable sent from the U.S. Embassy in Jordan to the U.S. Department of State.

**Ayalon, Ami** (Former Director of the Israel Securities Authority)

Address:  c/o DLA Piper LLP (US)
            1251 Avenue of the Americas
            New York, NY 10020

Mr. Ayalon is expected to testify about the Israel Securities Authority and its prevention of terrorist funding, including the funding of Hamas.

**Asoli, Osman** (Former Head of Audit, Arab Bank-New York)

Address:  c/o DLA Piper LLP (US)
            1251 Avenue of the Americas
            New York, NY 10020

Mr. Asoli is expected to testify about various aspects of Arab Bank's compliance practices and procedures, certain audits conducted by Arab Bank-New York, and the oversight of the Bank by the Office of the Comptroller of the Currency ("OCC").

**Sadeq, Tayseer** (Former CFO, Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
            1251 Avenue of the Americas

New York, NY 10020

Mr. Sadeq is expected to testify about various aspects of Arab Bank's operations and compliance practices and procedures, as well as the Saudi Committee.

**Saleh, Assad** (Head of Inward Transfer Unit, Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
           1251 Avenue of the Americas
           New York, NY 10020

Mr. Saleh is expected to testify about various aspects of Arab Bank's compliance and transfer practices and procedures, Arab Bank's correspondent banking relationships, the Saudi Committee, and transactions related to charities.

**Shukri, Fazwan**  (Former Global Head of Operations of Arab Bank)

Address:  c/o DLA Piper LLP (US)
           1251 Avenue of the Americas
           New York, NY 10020

Mr. Shukri is expected to testify about various aspects of Arab Bank's processing of transfers originated by the Saudi Committee, the Bank's compliance practices and procedures and operations, and the Shoman family and employee charitable donations during the Second *Intifada*.

**Abington, Edward** (Former U.S. Consul General in Jerusalem)

Address:  c/o DLA Piper LLP (US)
           1251 Avenue of the Americas
           New York, NY 10020

Mr. Abington is expected to testify about U.S. and foreign support for economic development and humanitarian assistance in the Palestinian Territories, as well as zakat committees and the banking sector operating in the Palestinian Territories.

**Hamdan, Mazen Abu** (Former Regional Manager, Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
           1251 Avenue of the Americas
           New York, NY 10020

Mr. Hamdan is expected to testify about various aspects of Arab Bank's operations, its compliance practices and procedures, the Saudi Committee and the IDF seizure and confiscation of accounts.

**Corcoran, William David** (President/CEO, American Near East Refugee Aid (ANERA))

Address:  c/o DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Mr. Corcoran is expected to testify about ANERA's relationships with, and support for, charities and zakat committees, operating in the Palestinian Territories, that Plaintiffs have placed in issue.  Mr. Corcoran's testimony will address the approvals ANERA received from USAID and the Israeli government to distribute aid to these charities and zakat committees.

**Hantoly, Ghalib** (Head of Operations, Arab Bank Gaza)

Address:  c/o DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Mr. Hantoly is expected to testify about various aspects of Arab Bank's compliance practices and procedures, and the PMA's regulation of Arab Bank.

**Myers, Martha** (Former Country Director, West Bank/Gaza, CARE International)

Address:  c/o DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Ms. Myers is expected to testify about USAID and CARE's relationships with, and support for, the charities and zakat committees, operating in the Palestinian Territories, that Plaintiffs have placed in issue.  Ms. Myers' testimony will also focus on the evolving nature of the vetting procedures required by the U.S. government to screen aid recipients during the relevant time period, including the charities and zakat committees at issue, and the results of those vetting procedures.

**Blackmore, David** (Former Head of Compliance, Arab Bank UK)

Address:  c/o DLA Piper LLP (US)
1251 Avenue of the Americas
New York, NY 10020

Mr. Blackmore is expected to testify about various aspects of Arab Bank's compliance program and alleged "blacklists."

**Flouty, William** (Former Assistant VP – Private Banking Dept, Arab Bank-New York)

Address:  c/o DLA Piper LLP (US)
                  1251 Avenue of the Americas
                  New York, NY 10020

Mr. Flouty is expected to testify about various aspects of Arab Bank's compliance practices, the policies and procedures of the private banking department at Arab Bank New York, certain transactions that Plaintiffs allege are in violation of the ATA, and Arab Bank's correspondent banking relationships.

**Hoppe-Krasner, Francine** (Senior VP & Head of Financial Institutions Group, Bank Hapoalim)

Address:  c/o DLA Piper LLP (US)
                  1251 Avenue of the Americas
                  New York, NY 10020

Ms. Hoppe-Krasner will testify about Bank Hapoalim's client relationship with Arab Bank and Bank Hapoalim's compliance policies and practices during the relevant time period (this testimony relates to "the state of industry standards or practices [during the relevant time period]" as evidence by the actual "banking industry standards [and] practices" of a leading Israeli bank operating in the jurisdiction in which the attacks at issue occurred (*see* Order, at 7 (*Linde* ECF No. 895)).

**Meyer, Raanan** (Global Compliance Officer for AML & ATF, Bank Hapoalim)

Address:  c/o DLA Piper LLP (US)
                  1251 Avenue of the Americas
                  New York, NY 10020

Mr. Meyer will testify about Bank Hapoalim's compliance policies and practices with regard to accounts and transfers during the relevant time period (this testimony relates to "the state of industry standards or practices [during the relevant time period]" as evidence by the actual "banking industry standards [and] practices]" of a leading Israeli bank operating in the jurisdiction in which the attacks at issue occurred (*see* Order, at 7 (*Linde* ECF No. 895)).

**Subryan, Jennifer** (Associate Counsel/Head of Compliance for NY branches, Bank Hapoalim)

Address:  c/o DLA Piper LLP (US)
                  1251 Avenue of the Americas
                  New York, NY 10020

Ms. Subryan will testify about the compliance policies and practices of Bank Hapoalim's U.S. offices during the relevant time period, including the fact that these offices did not apply, nor were they aware of, Israeli prohibited lists during the relevant time period (this testimony relates to "the state of industry standards or practices [during the relevant time period]" as evidence by the actual "banking industry standards [and] practices]" of a subsidiary of a leading Israeli bank operating in New York (*see* Order, at 7 (*Linde* ECF No. 895)).

**Teitelbaum, Robert**  (Director, Contracts Division, Chemonics, International, Inc.)

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Teitelbaum is expected to testify about USAID's relationships with, and support for, charities and zakat committees operating in the Palestinian Territories.

**Alomari, Baker** (Branch Manager, Jenin (Arab Bank Palestine))

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Alomari is expected to testify about various aspects of Arab Bank's compliance practices and procedures and threats to Arab Bank by terrorist organizations.

**Al-Tahan, Mohammad** (Former Head of Operations, Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Al-Tahan is expected to testify about various aspects of Arab Bank's operations, its compliance practices and procedures, and the Saudi Committee.

**Badawi, Samer** (Executive Director, United Palestinian Appeal (UPA))

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Mr. Badawi is expected to testify about zakat committees and other charities, as well as the relationship between these entities and UPA.

**Hurani, Jamal** (Consumer Banking Head, Arab Bank Palestine)

Address:  c/o DLA Piper LLP (US)
   1251 Avenue of the Americas
   New York, NY 10020

Mr. Hurani is expected to testify about various aspects of Arab Bank's compliance program, the PMA's regulation of Arab Bank, the Saudi Committee, and Arab Bank's relationship with Israeli authorities and banks.

   **(ii) Case-In-Chief and Rebuttal Expert Witnesses**

**Benthall, Jonathan**

Address:  c/o DLA Piper LLP (US)
   1251 Avenue of the Americas
   New York, NY 10020

Mr. Benthall is expected to testify consistent with the prior rulings of this Court in its Order dated Feb. 6, 2013 (ECF No. 917).

**Isaac, William**

Address:  c/o DLA Piper LLP (US)
   1251 Avenue of the Americas
   New York, NY 10020

Mr. Isaac is expected to testify regarding:  the role and function of banks in the modern economy, both in the U.S. and abroad; the practices and procedures associated with electronic funds transfers; and the process by which banks are regulated and examined in the U.S., the elements on which such examinations focus and the rating processes used by regulators to inform institutions of the results of examinations.

**Milton-Edwards, Beverly**

Address:  c/o DLA Piper LLP (US)
   1251 Avenue of the Americas
   New York, NY 10020

Professor Milton-Edwards is expected to testify consistent with the prior rulings of this Court in its Order dated Feb. 6, 2013 (ECF No. 917).

**Shmilovitch, Pinhas**

Address:  c/o DLA Piper LLP (US)
   1251 Avenue of the Americas

New York, NY 10020

Mr. Shmilovitch is expected to testify consistent with the prior rulings of this Court in its Orders dated December 6, 2011, *Linde*, 2011 WL 9974899, at *4 and Feb. 6, 2013 (ECF No. 917).

**Vitale, Anne T.**

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Ms. Vitale is expected to testify consistent with the prior rulings of this Court in its Order dated May 24, 2013 (ECF No. 895).

**Yadid, Barouch**

Address:  c/o DLA Piper LLP (US)
              1251 Avenue of the Americas
              New York, NY 10020

Lt. Col. (Ret) Yadid is expected to provide rebuttal testimony that responds to the conclusions reached by Plaintiffs' experts Matthew Levitt and Arieh Dan Spitzen with respect to (i) whether one clear, defined "*da'wa*" system operated by Hamas exists, and (ii) whether Hamas uses a system of civil institutions to recruit terrorists and finance Hamas' terrorist activities.

## 11.  DESIGNATION OF DEPOSITION TESTIMONY AND OBJECTIONS

*(A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.)*

Attached as **Exhibit E** are the parties' respective designations of deposition testimony, color-coded as follows:  Plaintiffs' designations of case-in-chief testimony (green) and cross-designations (purple); and Defendant's designations of case-in-chief testimony (yellow) and cross-designations (orange).  Attached as **Exhibit F** are the parties' respective objections to each other's case-in-chief designations, by page and line reference. A copy of each transcript also is included on a CD being provided to the Court with a hard copy of this Order.  As agreed by the parties, and approved by the Court, their respective objections to each other's cross-designations of testimony and rebuttal exhibits and documents will be provided to the Court on or before July 12.

## 12.  STIPULATED FACTS AND EXHIBIT LISTS

**1)**      As noted above, a statement of stipulated facts and/or law is attached as **Exhibit D**.

2)     Attached as **Exhibit G** is a schedule listing exhibits to be offered in evidence and, if not admitted by stipulation, the party or parties that will be offering them, including possible impeachment documents and/or exhibits, as well as exhibits that will be offered only on rebuttal. **Exhibit H** includes lists and brief descriptions of the basis for each party's objections to the admissibility of exhibits to be offered by the other party.

## 13.   MOTIONS *IN LIMINE*

The Court's Individual Motion Practice Rule 4 does not direct the parties to list the subject matters of anticipated motions *in limine* in a Pre Trial Order.  Plaintiffs and Defendant both anticipate filing motions *in limine* relating to a range of subject matters, and on or before July 12, 2013 will provide the Court with a list of the subject matters that will be addressed in those anticipated motions, and will thereafter propose a mutually agreeable briefing schedule.

Dated: July 1, 2013

Respectfully submitted,

/s/  Mark S. Werbner                          /s/  Kevin Walsh
Mark S. Werbner                              Shand S. Stephens
SAYLES WERBNER                              Kevin Walsh
1201 Elm Street, Suite 4400                  Anthony P. Coles
Dallas, TX 75270                             DLA PIPER LLP (US)
(214) 939-8700                               1251 Avenue of the Americas
Attorneys for the *Litle, Roth, Bennett, Weiss*   New York, NY 10020
and *Jesner* Plaintiffs                      (212) 335-4500
                                             Attorneys for Defendant

MOTLEY RICE, LLC
Michael E. Elsner
Donald A. Migliori
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

Attorneys for the *Almog, Afriat-Kurtzer*
and *Lev* Plaintiffs

OSEN LLC
Gary M. Osen
Peter Raven-Hansen, Of Counsel
2 University Place, Suite 201
Hackensack, New Jersey 07601
(201) 265-6400

ZUCKERMAN SPAEDER LLP
Aitan D. Goelman
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1800

TURNER & ASSOCIATES, P.A.
C. Tab Turner
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

Attorneys for the *Linde and Coulter* Plaintiffs